# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

JOHN H. KOLODZI,  )
      Plaintiff,  )
        )
      v.  )      CAUSE NO.: 2:16-CV-437-PRC
        )
NANCY A. BERRYHILL,  )
Acting Commissioner of the  )
Social Security Administration,  )
      Defendant.  )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff John H. Kolodzi on October 7, 2016, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16], filed by Plaintiff on April 5, 2017. Plaintiff requests that the July 28, 2015 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On July 13, 2017, the Commissioner filed a response, and Plaintiff filed a reply on August 1, 2017. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on July 10, 2013, alleging disability beginning September 1, 2011. The claims were denied initially and on reconsideration. On April 10, 2015, Administrative Law Judge Janice M. Bruning ("ALJ") held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and Brian L. Harmon, an impartial vocational expert. On July 28, 2015, the ALJ issued a written decision denying benefits, making the following findings:

     1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.      The claimant has not engaged in substantial gainful activity since September 1, 2011, the alleged onset date.

3.      The claimant has the following severe impairments: history of alcohol and substance abuse; mood disorder; learning disorder; attention deficit disorder; and anxiety.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple routine tasks.

6.      The claimant is capable of performing past relevant work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.      The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2011, through the date of this decision.

(AR 13-22).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal and an award of benefits or, in the alternative, remand for further proceedings, arguing that the ALJ erred in evaluating Plaintiff's mental impairments, erred in evaluating the opinion of treating psychiatrist Dr. Dobransky, erred in evaluating the opinion of Plaintiff's treatment counselor Cheryl Montalbano-Rahmany, and improperly assessed Plaintiff's subjective complaints. Plaintiff does not contest the physical RFC finding or the step four finding that a person with Plaintiff's residual functional capacity can perform Plaintiff's past work. The Court considers each argument in turn.

**A. Mental Impairments**

Plaintiff argues that the ALJ made two errors in evaluating Plaintiff's mental limitations related to a head injury in 2007 as well as alleged deficits in social functioning.

*1.     History of Head Trauma*

First, Plaintiff argues that the ALJ made a mistake of fact when she wrote: "The claimant has a history of assault in 2007 (Exhibit 1F/8). However there was only a reference to this in the record but no actual documentation and no evidence of any injuries with functional limitations for 12 months. Thus, this is a nonsevere impairment." (AR 14). Plaintiff argues that this is factually incorrect because a November 28, 2007 CT scan performed at Community Hospital shows an orbital floor fracture as well as a nondisplaced right nasal bone fracture alongside bilateral hematomas. (AR 322-323). However, Plaintiff and the ALJ cite the same November 28, 2007 sinus CT scan, as pages 322 and 323 of the Administrative Record cited by the Plaintiff are pages 7 and 8 of Exhibit 1F cited by the ALJ. Thus, Plaintiff is incorrect that the ALJ was not "aware of the CT scan." (ECF, p. 10).

The ALJ correctly stated that there is no indication in this November 28, 2007 record of any functional limitations from the trauma lasting more than twelve months.

In support of his position that he has ongoing limitations resulting from the 2007 trauma, Plaintiff cites the opinion of Dr. Dobransky, Plaintiff's treating psychiatrist, who noted in his March 18, 2015 Mental Medical Source Statement that Plaintiff's "condition may be contributed to by closed head injury, which may produce unexpected and variable cognitive and emotional dysfunction." (AR 449); *see also* (AR 445). Plaintiff's treating therapist Cheryl Montalbano-Rahmany noted in her October 2014 treatment note that Plaintiff reported that in 2011 he was beaten in the head, and she included in her March 18, 2015 Mental Medical Source Statement the comment that six years earlier Plaintiff suffered a "severe beating" and a concussion. (AR 500, 548). Thus, Plaintiff argues that these records show that his psychiatric impairments may have been caused by the 2007 trauma and that the ALJ ignored these records. Although the ALJ did not specifically cite these two Mental Medical Source Statements or Montalbano-Rahmany's treatment notes at step two, the ALJ necessarily considered them because the sinus CT scan does not itself say anything about an assault but rather identifies the "clinical indication" for the testing as "trauma." (AR 322). Thus, because the ALJ identified the injury in 2007 as an "assault," the ALJ must have reviewed the treating source documents identified by Plaintiff.

Nevertheless, Plaintiff argues that the ALJ made an error of fact because the treating sources identified the 2007 assault as a potential cause for ongoing mental health issues in 2014 and 2015 yet the ALJ did not find the head injury to be a severe impairment at step two of the sequential analysis. (ECF p. 11). Plaintiff conflates the ALJ's statement regarding the physical injury that occurred in 2007 with the possible ongoing mental or emotional effects of that injury, which

Plaintiff describes as causing him to suffer from "distressing emotional issues for years after" the trauma. (ECF p. 11). The ALJ is correct that there is no further medical evidence in the record after 2007 regarding the head injury or evidence of significant cognitive dysfunction in the record. However, the possible effects of the trauma, the "distressing emotional issues for years" are the very impairments that the ALJ identified as severe at step two: "history of alcohol and substance abuse, mood disorder, learning disorder, attention deficit disorder, and anxiety." (AR 13). Thus, the ALJ accounted for Plaintiff's severe emotional issues at step two, regardless of their cause. Moreover, Plaintiff has not identified any further limitations stemming from the mental impairment that are not already included in the RFC. The ALJ did not err at step two regarding Plaintiff's head trauma.

2.    *Social Functioning*

Second, Plaintiff argues that the ALJ erred in finding that Plaintiff has no limits in social functioning. Indeed, at step three of the sequential analysis, the ALJ found that Plaintiff has no difficulties in social functioning. (AR 16). The ALJ noted Plaintiff's complaints of panic attacks but commented that there was no evidence of this in the record. *Id.* The ALJ noted that Plaintiff is shown to get along with others, including those who did the functional reports, that he can go out alone with no evidence of abnormal behaviors, and that he can be around others such as in church, the store, and alcoholics anonymous meetings without evidence of decompensation or getting into altercations or getting upset. *Id.* (citing Ex. 3E, 4E, 8E). The ALJ further noted that Plaintiff gets along with neighbors and socializes, spends time with his grandchild, has helped a carpenter friend at work, and has been able to do work for others such as mowing lawns. *Id.* (citing Ex. 3E, 4E, 8E, 9E, and 10F).

Plaintiff argues that the ALJ identified only those pieces of evidence supporting a finding of non-disability while ignoring related evidence that undermines the conclusion and that the ALJ ignored an entire line of evidence contrary to the ruling. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). In support, Plaintiff cites two pieces of evidence that he argues demonstrate his anxiety and mental impairments impacting his ability to deal with others—Dr. Karr's January 13, 2014 report and Dr. Dobransky's March 18, 2015 opinion. (ECF 16, pp. 11-12). Neither supports Plaintiff's position on social limitations.

First, Dr. Karr, a licensed psychologist, conducted a consultative examination of Plaintiff on January 13, 2014. (AR 440-44). In his decision, the ALJ summarized Dr. Karr's examination report, noting that the report showed a history of alcoholism, anxiety, irritability, sleep disturbance, and an occasional stutter; that Plaintiff has a driver's license and drove himself to the examination; that Plaintiff was living with his wife and had one adult daughter; that Plaintiff had a history of special education services while in school; that Plaintiff assists his friend who is a carpenter, performs lawn care, plays with his grandchild, watches television, and shops with his wife; and that Plaintiff performs household chores, uses the microwave, visits with neighbors, and enjoys mowing lawns. The ALJ noted that Plaintiff reported to Dr. Karr that he last drank alcohol in July 2013, which the ALJ noted is contrary to the medical record (Plaintiff was hospitalized in December 2013 for alcohol abuse), and that Plaintiff attends a support group twice a week. The ALJ noted Plaintiff's report that he takes Xanax. The ALJ then recited Dr. Karr's findings that Plaintiff's mood was grossly intact and that described Plaintiff as engaged, friendly, and polite with intact memory. The ALJ noted Dr.

Karr's diagnosis of history of alcohol abuse, generalized anxiety disorder, mood disorder, and learning disorder. (AR 20).

In his brief, Plaintiff argues that the ALJ erred by not including Dr. Karr's additional findings that Plaintiff occasionally stuttered and appeared anxious with accompanying heightened affect, characterized by occasional anxious laughter and notably pressured speech, and that Plaintiff's responses were lengthy, occasionally tangential, reflecting his seeming anxiety. (ECF 16, p. 12 (citing AR 442)). However, both of these facts are subsumed in Dr. Karr's diagnosis of generalized anxiety disorder and mood disorder. And, neither fact speaks to Plaintiff's ability to socially interact with others. None of Dr. Karr's report of Plaintiff's history includes any difficulty with social interaction. The ALJ correctly reported Dr. Karr's statement that Plaintiff "was eager to talk, engaged in a friendly, polite manner." (AR 440). In addition, Dr. Karr wrote, "Speech was intelligible, characterized by an occasional stutter and accompanied by limited eye contact. Throughout he tried hard, was able to persist without indication of oppositional behavior." *Id*. Dr. Karr also wrote that Plaintiff's "[m]ood was grossly intact without overt indication of dysphorisa or agitation." *Id*. In the summary, Dr. Karr wrote that Plaintiff "presented in a friendly, cooperative manner." (AR 444). As for Plaintiff's heightened affect, Dr. Karr associated this with Plaintiff's anxiety and history of medication for anxiety. There is no reference to difficulties with social interaction. The ALJ did not err by not including every aspect of Dr. Karr's report and did not ignore evidence that undermines his conclusion on social interaction.

As for Dr. Dobransky's March 18, 2015 opinion, Plaintiff notes that Dr. Dobransky checked the box for "unable to meet competitive standards" for "maintain socially appropriate behavior." (AR 448). Dr. Dobransky also checked "dealing with the public (strangers)" and "dealing with

supervisors" as stressors for Plaintiff. (AR 449). As discussed in the next section, the ALJ did not err in only giving "some weight" to Dr. Dobransky's March 18, 2015 opinion, in part, because it was not supported by his treatment records.

Dr. Dobransky's treatment records do not include any indication that Plaintiff would be unable to maintain socially appropriate behavior. Plaintiff first presented for mental health treatment on December 16, 2013, although he did not meet with Dr. Dobransky but rather a licensed clinical social worker for the initial evaluation. (AR 541). On March 27, 2014, on mental status exam, Dr. Dobransky found that Plaintiff had normal rate, tone, and prosody of speech; had normal psychomotor activity level; had full range of affect; was organized and logical with no delusions or hallucinations; was alert and oriented x3; and did well with attention, registration, and concentration as well as short term memory. (AR 523). Dr. Dobransky found that Plaintiff's insight and judgment regarding his own illness is "fair." (AR 523).

On April 24, 2014, there are repeated references to anxiety, but no discussion of an inability to behave in a socially appropriate manner or of difficulties with social interaction. On mental status examination, Plaintiff was oriented x3; had normal rate and tone of speech; was calm and courteous; had normal psychomotor activity; reported a "I'm calmed down" mood; had full range, organized, and logical affect; had no delusions or hallucinations; and did well in attention, concentration, memory, and language. (AR 526).

On May 22, 2014, Plaintiff continued to complain of anxiety. On mental status examination, he was alert and oriented x3; had a normal rate/tone of speech; was calm and courteous; had normal psychomotor activity; had a "shaky, anxious" mood; had full range, organized, and logical affect; had no delusions or hallucinations; did well with attention, concentration, memory, and language;

and had no other cognitive disturbances. He was continuing therapy with Ms. Montalbano-Rahmany for anxiety and addiction. (AR 528).

On July 2, 2014, Dr. Dobransky noted that Plaintiff continued to treat with therapist Ms. Montalbano-Rahmany because he needed help with his depression and anxious mood. Plaintiff reported that he felt better since his last session and felt the medicine was helpful although he also reported ongoing anxiety. On mental status examination Plaintiff was alert and oriented x3; had normal rate and tone of speech; was calm and courteous; had normal psychomotor activity; reported a "feels better" mood with a full range; had an organized and logical affect with no delusions or hallucinations; and did well with cognition for attention, concentration, memory, and language. (AR 529).

On August 6, 2014, Plaintiff again reported feeling better since the last session and felt that the medicine was helpful. Dr. Dobransky noted that Plaintiff was pleased to have finished seeing Ms. Montalbano-Rahmany and was celebrating that he got the benefit of the treatment. (AR 531). Plaintiff reported less ongoing anxiety. The same findings on mental status examination were made with his mood reported as "good." *Id*. He continued to work on reducing the dose of Xanax. *Id*.

On October 1, 2014, Plaintiff reported that he was thinking of returning to group therapy for another six months. He reported less anxiety. On mental status examination, he again was alert and oriented x3; had normal rate and tone of speech; was calm and courteous; had normal psychomotor activity; described his mood as "changes rapidly where I get fired up"; had full range, organized, logical affect with no delusions or hallucinations; and did well with attention, concentration, memory, and language. (AR 533). On November 19, 2014, and December 31, 2014, the mental status examination reports were similar. (AR 535, 537).

The next progress report, which is dated March 18, 2015, occurred when Plaintiff presented with his wife to discuss his disability claim and paperwork. (AR 539). This time, on mental status exam, Plaintiff was alert oriented x 2 (he remembered March but not the date); had a normal rate and tone of speech; was calm and courteous; had normal psychomotor activity; reported that his mood "changes a lot"; and had full range, organized, and logical affect with no delusions or hallucinations. (AR 539). On cognition, Dr. Dobransky noted errors with spelling and serial sevens. (AR 540). However, Plaintiff remembered the content of the prior session and could remember three objects after five minutes. *Id*. For long term memory, he could remember the name of his hometown but not his high school. *Id*.

In his brief, Plaintiff asserts that he had difficulty with social functioning based on Dr. Dobransky's March 27, 2014 treatment record that Plaintiff appeared "disheveled." (AR 523). Plaintiff fails to note the full sentence, which provides: "The patient appears disheveled but with normal rate, tone and prosody of speech." (AR 523). Dr. Dobransky goes on to write, "Normal psychomotor activity level." *Id*. It is unclear how the comment that Plaintiff was "disheveled" on one occasion relates to an inability to interact socially, when there do not appear to be any other such references to his appearance in the longitudinal treatment record with Dr. Dobransky. Plaintiff also notes that, on November 19, 2014, Plaintiff presented in a "hyper" state. (AR 536). However, Dr. Dobransky does not link this to Plaintiff's ability to interact socially but rather to his anxiety. Plaintiff further notes that he reported to Ms. Montalbano-Rahmany that he would stutter when he got excited. (AR 481). It is unclear how his stutter is reflective of a difficulty interacting socially or in a socially appropriate manner, and Plaintiff does not cite any evidence demonstrating a related limitation.

Last, in the closing paragraph of this section of his opening brief, Plaintiff notes that the State Agency psychiatrist at the reconsideration level found that Plaintiff had moderate limitations on understanding, remembering, and carrying out detailed instructions as well as moderate limitations in responding appropriately to changes in the work setting. (ECF 15, p. 13) (citing AR 94-95). However, neither of these findings go to social functioning, and the ALJ accommodated these limitations with the RFC for simple routine tasks. (AR 17).

The ALJ did not err by finding that Plaintiff did not have any limitations in social functioning at step three and by not including any limitations in social functioning in the RFC.

### B. Treating Physician Opinion

Next, Plaintiff contests the weight the ALJ gave to the opinion of treating psychiatrist, Dr. Dobransky. Plaintiff does not disagree with the weight given to any other medical opinion evidence by the ALJ. In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. §§ 404.1527(b); 416.927(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id.* §§ 404.1527(e)(2); 416.927(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to

each opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii), (iii); 416.927(e)(2)(ii), (iii); *Scrogham*, 765 F.3d at 697-98; *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5); 416.927(c)(2)-(5).

As noted above, on March 18, 2015, Dr. Dobransky completed a Mental Medical Source Statement in which he found Plaintiff either "seriously limited, but not precluded," "unable to meet competitive standards," or "no useful ability to function" in all categories of "mental abilities and aptitudes needed to do unskilled work." (AR 447). He also found severe limitations in many of the "mental abilities and aptitude needed to do particular types of jobs." (AR 448). Dr. Dobransky opined that Plaintiff would be absent from work more than four days per month. (AR 449).

The ALJ gave "some weight" to this opinion, noting that the treatment relationship began in December 2013. The ALJ then noted that Dr. Dobransky does not refer to treatment notes or specific events to support the "extreme limitations including missing work for 4 days a month." (AR 21). The ALJ explained that Dr. Dobransky's treatment notes did not show that Plaintiff had such extreme limitations. The ALJ referred back to his recitation of the evidence of record, noting that many records indicated that Plaintiff was alert and oriented with intact memory. The ALJ also noted that Plaintiff remained "capable of various activities requiring good concentration and focus as well as social functioning evidenced by him interacting with others . . . ." (AR 21). The ALJ found it "odd" that Dr. Dobransky did not discuss Plaintiff's alcohol and cocaine abuse, which the ALJ noted

was the final diagnosis of Plaintiff's December 2013 hospitalization for alcohol abuse around the time he starting treating with Dr. Dobransky's clinic. (AR 21 (citing Ex. 16 F/3)). Finally, the ALJ noted that Plaintiff saw Dr. Dobransky on March 18, 2015, the date of the Medical Source Statement, because he "needed a disability." (AR 21 (citing Ex. 12F/89)).

Plaintiff identifies several purported errors with regard to the weight the ALJ gave Dr. Dobransky's opinion. First, Plaintiff argues that, although the ALJ noted that Dr. Dobransky was a treating doctor, the ALJ did not note the length of treatment or the fact that he was a specialist. (ECF 14-15). Both are incorrect. The ALJ noted that Dr. Dobransky began treating Plaintiff in December 2013 and gave his opinion in March 2015. The ALJ referenced the treatment records (which the Court summarized in the previous section), demonstrating that the ALJ was aware of the frequency of treatment. The ALJ also identified Dr. Dobransky as "Paul Dobransky, M.D.", recognizing his medical degree. Although the ALJ did not use the word "psychiatrist" in this paragraph, the initial evaluation is titled "Psychiatric Evaluation," (AR 522), the subsequent treatment notes are titled "Psychiatric Progress Note," (AR 525).

Second, Plaintiff argues that the ALJ erred by finding that Dr. Dobransky's opinion did not contain references to specific treatment notes, arguing that there is no such requirement in 20 C.F.R. § 404.1527 and contending that the opinion contains sufficient clinical findings and responses to treatment. Plaintiff cites page 445 of the Administrative Record, but does not identify what findings support his opinion. A review of that page of the Mental Medical Source Statement shows the history of head injury, a list of prescribed medications, and a description of clinical findings that provides: "unstable, [ ] behavior and mood variability characteristic of closed head injury vs. Bipolar, with depressive symptoms and cognitive deficits in memory, language and calculation."

(AR 445). However, a comparison of this statement with the treatment records shows that the opinion is not consistent with the records. All of Dr. Dobransky's treatment records consistently showed normal memory and cognitive functioning until the March 18, 2015 examination for which Plaintiff presented for his disability form. Plaintiff also points generally to Dr. Dobransky's treatment records and the consistent diagnoses of major depression, generalized anxiety disorder, and a moderate severity of stressors. (ECF 16, p. 15 (citing AR 523, 526, 528, 530, 536, 540)). Yet, those diagnoses are not inconsistent with the medical evidence of record or the ALJ's RFC. Plaintiff does not identify any specific findings from the treatment record that support the severe limitations opined by Dr. Dobransky on March 18, 2015. Plaintiff also notes the prescribed medications of Prozac, Xanax, Adderall, Gabapentin, and Tegretol, (AR 445), but does not suggest how this supports the severe limitations in the opinion; the same page of Dr. Dobransky's Mental Medical Source Statement indicates that Plaintiff has no side effects from the medication, and the treatment records show that Plaintiff was doing well on medication and was working on reducing his dosage.

Next, Plaintiff argues that the ALJ should have contacted Dr. Dobransky for clarification of his opinion, citing *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). In *Barnett*, the court held that the ALJ erred in finding that the doctor's opinion was inconsistent with the treatment records, and that if the ALJ's "real concern was the lack of backup support for [the doctor's] opinion, the ALJ had a mechanism to rectify the problem," which was to solicit additional information. *Id*. In this case, there was sufficient evidence of record to show that the opinion was not supported by the record, and it was not necessary to contact Dr. Dobransky for clarification.

Third, Plaintiff criticizes the ALJ for discounting Dr. Dobransky's opinions on the basis that "the claimant remained capable of various activities requiring good concentration and focus as well

17

as social functioning," including with his property manager. (AR 21). Plaintiff argues that the ALJ overlooked a third-party function report from the property manager, Diane Maggio, which Plaintiff describes Maggio as stating that Plaintiff gets distracted while doing yard work, leaving half of the yard unmowed and that he does not follow written or spoken instructions well. (AR 251). Thus, Plaintiff argues that the ALJ ignored qualifications on the performance of daily activities. However, as discussed in the credibility determination below, Maggio does not state that Plaintiff does not follow instructions well but rather that he needs reminding to do work, without an explanation of why he needs reminding. *Id.*

Fourth, Plaintiff faults the ALJ for finding it "odd" that Dr. Dobransky did not discuss Plaintiff's alcohol and cocaine use. As Plaintiff notes, the last page of the Mental Medical Source Statement form asks, "If your patient's impairments include alcohol or substance abuse, do alcohol or substance abuse contribute to any of your patient's limitations set forth above?" (AR 450). Dr. Dobransky checked the box for "No." *Id.* After the question "Please explain what changes you would make to your description of your patient's limitations if your patient were totally abstinent from alcohol or substance abuse:", Dr. Dobransky wrote, "none." *Id.* Thus, in Dr. Dobransky's opinion, alcohol or substance abuse was not a contributing factor; rather, Dr. Dobransky felt that the closed head injury was the source. The ALJ's comment, however, is based on Plaintiff's dishonesty with Dr. Dobransky in March 2014 when Plaintiff reported that his last use of alcohol was in July 2013, when Plaintiff in fact had been hospitalized in December 2013 for alcohol abuse. Plaintiff also denied drug use to Dr. Dobransky, although he reported elsewhere that he had used cocaine through at least March 2013. (AR 363). Both misrepresentations could have affected Dr. Dobransky's opinion about the cause and severity of Plaintiff's mental impairments.

Last, Plaintiff argues that the ALJ ignored the extensive treatment history when the ALJ noted that Plaintiff visited Dr. Dobransky on March 18, 2015 because he "'needed a disability' and not because of any other mental complaints." (AR 21). However, the ALJ specifically noted the "treatment records," and the distinction regarding the purpose of the March 18, 2015 visit is important because Plaintiff routinely had normal results for cognition on mental status examination until the March 18, 2015 visit. The ALJ appropriately considered this fact in weighing the March 18, 2015 opinion. Contrary to Plaintiff's assertion in his brief, (ECF 16, p. 17), nowhere does the ALJ speculate that Plaintiff's mental issues simply stopped because he saw Dr. Dobransky for the disability form in March 2015.

In addition, the mental status findings by other mental health professionals supports the weight given to Dr. Dobransky's opinion, as both Dr. Walsh and Dr. Karr recorded essentially normal mental status findings, other than some difficulty with mathematical equations. (AR 408-11; 440-44).

When viewed as a whole, the ALJ did not err in the weight given to Dr. Dobransky's March 18, 2015 Mental Medical Source Statement, largely because it is not supported by the treatment records and was inconsistent with the record as a whole, as articulated by the ALJ.

### C. Treating Counselor's Opinion

Plaintiff argues in the opening brief that the ALJ failed to properly evaluate the opinion of his treating counselor, Ms. Cheryl Montalbano-Rahmany, but does not pursue the argument in his reply brief. Plaintiff argues that the ALJ did not follow Social Security Ruling 06-3p by not applying the factors of 20 C.F.R. § 404.1527(d) when considering Montalbano-Rahmany's opinion. Social Security Ruling 06-3p provides:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

2006 WL 2329939, at *2 (Aug. 9, 2006). While opinions from other medical sources are not entitled to controlling weight, "[i]n deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)." *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010). Regarding the explanation in the ALJ's decision, the Ruling provides:

> Although there is a distinction between what an adjudicator must consider and when the adjudicator must explain in the disability determination decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at *6.

In this case, the ALJ specifically identified the weight given to the opinion of Plaintiff's counseling therapist, Ms. Montalbano-Rahmany, as required by the Ruling, giving the March 18, 2015 Mental Medical Source Opinion "little weight because it did not refer to treatment notes or reports to support the opinion." (AR 21). The ALJ also noted that the opinion referenced the past assault in 2007 but that there is no evidence that the event had a lasting impact on Plaintiff's functioning and that Plaintiff performed substantial gainful activity after the alleged 2007 assault. *Id*.

First, Plaintiff argues that the ALJ did not address Ms. Montalbano-Rahmany by name. However, the ALJ cited the correct document filled out by Ms. Montalbano-Rahmany and correctly

identified her as Plaintiff's counseling therapist, recognizing her speciality and her treatment role. The failure to identify her name is not reversible error.

Next, Plaintiff argues that the ALJ did not refer to the length of treatment or that she had reviewed the treatment records. But, as with Dr. Dobransky's records, a review of Ms. Montalbano-Rahmany's treatment records does not reveal any information that would change the RFC; the majority of the records show that Plaintiff's treatment was focused on staying sober. (AR 451-79, 483-86, 489-514). Moreover, Plaintiff does not identify any specific treatment record authored by Ms. Montalbano-Rahmany that supports the level of impairment opined in her Mental Medical Source Statement or that supports any greater limitations than those imposed by the ALJ in the RFC. The fact that the written decision does not identify the length of treatment or note that the ALJ reviewed the treatment records does not require remand.

Plaintiff also argues that the ALJ's decision contains factually incorrect information regarding Plaintiff's head injury. The ALJ wrote that, although Ms. Montalbano-Rahmany's report "makes reference to a past assault in 2007, there is no actual evidence of this event in the record nor indication in subsequent medical records that the event had lasting impact on the claimant's social functioning." (AR 21). As discussed in Part A.2 above, other than Dr. Dobransky's suggestion that Plaintiff's cognitive impairments may be a result of the 2007 assault, the ALJ is correct that there is no evidence in the medical records regarding the head injury. Again, the ALJ fully accommodated Plaintiff's current mental impairment as supported by the record, regardless of its cause. There also appears to be a factual inconsistency with Ms. Montalbano-Rahmany's report, as her treatment records show that Plaintiff reported to her that his daughter's boyfriend beat him up in 2011, and there are no corresponding 2011 treatment records for a head injury. (AR 5011).

Finally, Plaintiff argues that the ALJ erred by discrediting Ms. Montalbano-Rahmany's opinions in part on the basis that "the claimant performed substantial gainful activity after the alleged 2007 assault." (AR 21). In support, Plaintiff cites *Henderson v. Barnhart*, in which the Seventh Circuit Court of Appeals reasoned that "the fact that a person holds down a job doesn't prove that he isn't disabled." 349 F.3d 434, 435 (7th Cir. 2003) (citing *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 983 (7th Cir. 1999); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998); *Jones v. Shalala*, 21 F.3d 191, 192-93 (7th Cir. 1994); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998)). Unlike in *Henderson*, the ALJ in this case did not find Plaintiff "not disabled" because he worked after his head trauma in 2007. Rather, the ALJ noted this fact as one aspect of weighing Ms. Montalbano-Rahmany's opinion, and the fact is true. The other evidence of record does not support a finding that Plaintiff's impairments are totally disabling, either during that time period or currently. *See Hawkins*, 326 F.3d at 918; *Perlman*, 195 F.3d at 982-83 (finding that the plaintiff's ability to work successfully from 1992 to 1994 after a 1988 accident showed that the accident did not prevent her from working when there was no evidence that her condition worsened or that her ability to work 1992 to 1994 was a "dogged effort that could not be continued"). Plaintiff has not offered any evidence that he worked after 2007 as a result of "superhuman effort" that cannot be sustained. *Perlman*, 195 F.3d at 983.

The ALJ did not err in weighing the March 18, 2015 Mental Medical Source Statement provided by Ms. Montalbano-Rahmany.

## D. Credibility Determination

Finally, Plaintiff argues that the ALJ erred in evaluating Plaintiff's self-reported problems with memory and forgetfulness. As noted by Plaintiff, on March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's decision in this case is governed by the standard of SSR 96-7p. *See* Notices, Social Security Ruling 16-3p, 2017 WL 4790249 (Oct. 25, 2017) (clarifying that Social Security Ruling 16-3p only applies when the ALJs "make determinations and decisions on or after March 28, 2016" and that Social Security Ruling 96-7p governs cases decided before that date).

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a); 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)    The individual's daily activities;
(2)    Location, duration, frequency, and intensity of pain or other symptoms;
(3)    Precipitating and aggravating factors;
(4)    Type, dosage, effectiveness, and side effects of any medication;
(5)    Treatment, other than medication, for relief of pain or other symptoms;
(6)    Other measures taken to relieve pain or other symptoms;
(7)    Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation

marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05; *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

The ALJ found Plaintiff's self-reported problems with memory and forgetfulness less than credible: "He claims that he cannot remember where his clothes[sic], thus, he is basically unable to get dressed himself or how to do laundry, and indicated that he no longer helped a carpenter friend because he gets confused about tools." (AR 20). The ALJ recognized that, in response to his attorney's questioning, Plaintiff responded that he could not remember today's date (the date of the hearing) and that Plaintiff complained of problems with dates and forgetfulness to consultative examiners, citing the August 28, 2013 consultative mental status examination by Robert J. Walsh, Psy.D. (AR 20 (citing Ex. 6F)). But, the ALJ then noted that Plaintiff "is able to remember how to drive and there is no evidence of him getting lost when leaving his residence, he is able to remember how to operate a lawnmower and earns money mowing lawns, he goes shopping with no evidence of getting confused in the store and he can care for his ill mother with no suggesting that he might give her the wrong medication or neglect such care due to forgetfulness or memory disorder." *Id*. The ALJ then reasoned, "the record does not support the claimant's claims of such severe memory problems and he has been found to be alert and oriented by many treating sources and examiners.

No treating source has suggested the claimant requires '24/7' care or supervision which one would expect if he is indeed so forgetful that he cannot even get dressed without assistance." *Id.*

In assessing Plaintiff's subjective complaints, the ALJ also noted that Plaintiff may "not be entirely truthful as he denied using alcohol since 2009 in Exhibit 5F but Exhibits 2F and 4F show otherwise. He again lied about the last time that he used alcohol as described above as well as in January 2014, when he indicated to Dr. Jao, a consultative examiner, that he had not been drinking for 18 months (mid-2012) but the record shows the claimant was hospitalized for alcohol abuse and cocaine use (final diagnosis) only one month earlier (Exhibits 9F; 16F/3). As noted above, the claimant indicated that he and his wife mow lawns for cash, but he denied this at the hearing." (AR 20-21).

Plaintiff argues that the ALJ erred in several aspects of the credibility analysis. First, Plaintiff argues that, regarding his ability to drive, the ALJ failed to note that Plaintiff does not drive much due to his anxiety, noting that Plaintiff testified that he was too paranoid to drive, which is consistent with his function report. (AR 42); (AR 257). And, Plaintiff asserts that there is no evidence that he did not actually get lost, arguing that the ALJ based this statement on speculation. The ALJ made these observations about driving in regard to Plaintiff's memory, and the evidence is that Plaintiff was able to drive and that there is no evidence that memory affected his ability to go places while driving. These conclusions about memory are supported by the record and are not speculation nor an unreasonable inference. The ALJ made this observations as part of a constellation of facts, which together, demonstrate that Plaintiff is not as limited as he suggests.

Second, Plaintiff argues that, in finding the fact that Plaintiff could remember how to operate a lawnmower decreased his credibility, the ALJ did not acknowledge the evidence provided by

Plaintiff's property manager, Diane Maggio, that Plaintiff would mow half a lawn and could not follow directions regarding lawn care. (AR 248, 251). Thus, Plaintiff argues that, even if he could operate the machine, he could not carry out the task. However, Maggio did not state that Plaintiff could not follow directions; she wrote that he "gets distracted, leaves half done" and needs a "reminder to finish" and does not offer any circumstances of how he gets distracted or why he doesn't finish. (AR 248). In other words, Maggio does not say that he does not "remember" to finish, rather she has to remind him to finish without an explanation for why he does not finish. Although Plaintiff is correct that the ALJ did not discuss this statement by Maggio, given the vague nature of the statement, it is not strong support for Plaintiff's assertion of memory problems.

Third, Plaintiff argues that the ALJ erred by noting that Plaintiff's treatments indicated that he was "alert and oriented, with intact memory." (AR 21). Plaintiff argues that the ALJ had no basis for finding that Plaintiff was not psychotic or did not have a faulty memory based on the clinicians finding him alert and oriented. This is not the case of an ALJ making an independent medical finding as argued by Plaintiff, who cites *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (finding that an ALJ must "rely on expert opinions instead of determining the significance of particular medical findings themselves"). Rather, the same treatment records of Dr. Dobransky that contain the findings of Plaintiff routinely being alert and oriented also consistently find that Plaintiff had no cognitive deficits, including doing well in attention, concentration, memory, and language. *See, e.g.*, (AR 523, 526, 528, 529). Other than the August 28, 2013 consultative exam record of Dr. Walsh, in which Dr. Walsh noted that Plaintiff complained of memory issues and the September 18, 2013 psychological evaluation by Dr. Walsh, Plaintiff does not identify any medical records demonstrating memory deficits inconsistent with the RFC for an ability to understand, remember, and carry out simple

routine tasks. At the initial evaluation on March 27, 2014, Dr. Dobransky found that Plaintiff could "name and recall 3 objects at 1 and 5 minutes and has long-term memory noting the name of his hometown and his high school." (AR 523).

Fourth, Plaintiff argues that the ALJ erred by speculating that, because no doctor opined that Plaintiff would require "24/7 care or supervision," his memory problems were not significant. (AR 20). Plaintiff argues that there is no logical basis for this finding, especially because Plaintiff's wife provided him significant supportive care in the form of sorting and handing him his pills, doing household chores, and laying out his clothes. (AR 43, 44, 55). Plaintiff argues that he is not alleging that he has *no* memory but rather that his memory is compromised. And Dr. Walsh's September 18, 2013 consultative exam finding that Plaintiff's general memory and attention/concentration were in the borderline to significantly impaired range. (AR 412). Although the ALJ's conclusion on this point may be overly broad, the evidence overall does not support Plaintiff's assertion that he does not have the ability necessary to remember simple instructions on a full-time basis required for unskilled work.

Finally, Plaintiff notes that the ALJ inferred from the record that Plaintiff was not entirely truthful about his alcohol use. (AR 20). Plaintiff argues that this is irrelevant because the ALJ failed to link Plaintiff's alcohol use with "any specific alleged limitation." (ECF 16, p. 22). Plaintiff misunderstands the ALJ's finding; the ALJ does not say that alcohol *use* made him less than credible but rather that *lying* about the alcohol use made him less than credible. Plaintiff also cites *Perkins v. Astrue*, arguing that the ALJ failed to logically "bridge [Plaintiff's] struggles with alcoholism with any relationship to a specific alleged limitation, yet still assailed [Plaintiff's] credibility because the record was not entirely consistent with the last time he drank." (ECF 16, pp. 22-23 (citing *Perkins*

*v. Astrue*, 498 F. App'x 641, 644 (7th Cir. Jan. 10, 2013)). However, in *Perkins*, the court criticized the ALJ because "the ALJ only briefly mentioned Perkins's dishonesty about his drug abuse, without explaining whether or how much this undermined Perkins's credibility." 498 F. App'x at 644. In contrast, the ALJ in this case specifically explained that Plaintiff's dishonesty to treating doctors undermined his credibility by finding that Plaintiff "might not be entirely truthful" and then detailed the several instances in which Plaintiff lied about his alcohol and/or drug use and noted the importance of the timing of his use and dishonesty. This was a proper factor for the ALJ to consider in assessing Plaintiff's credibility.

The ALJ's credibility determination is not patently wrong. The ALJ sufficiently articulated her reasoning, which is supported by substantial evidence of record.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant Commissioner of Social Security and against Plaintiff John H. Kolodzi.

So ORDERED this 12th day of February, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT